UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

524 FLORENCE STREET, KALAMAZOO, MICHIGAN and
SIX PIECES OF ASSORTED JEWELRY,

       Defendants.

_____/

Civil No. 1:23-cv-00425

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Now comes Plaintiff, United States of America, by and through its attorneys, Mark A. Totten, United States Attorney for the Western District of Michigan, and Joel S. Fauson, Assistant United States Attorney, and states upon information and belief that:

### NATURE OF THE ACTION

1. This is a civil forfeiture action filed pursuant to 21 U.S.C. §§ 881(a)(6), 881(a)(7), 18 U.S.C. § 985, and Supplemental Rule (G)(2) to the Federal Rules of Civil Procedure to forfeit and condemn to the use and benefit of the United States of America the real property commonly known as 524 Florence Street, Kalamazoo, Michigan 49007 (the "Defendant Real Property") and six pieces of jewelry (the "Defendant Jewelry") more fully described below.

1

## THE DEFENDANT IN REM

2. The Defendant Real Property is the real property commonly known as 524 Florence Street, Kalamazoo, Michigan 49007, more fully described as:

    a. Lot 31, except the East 35 feet of Bush and Patterson's Second Addition to the Village (now City) of Kalamazoo, according to the Plat thereof as recorded in Liber 2 of Plats on Page 31, Kalamazoo County Records.

3. The Defendant Jewelry consists of the following pieces of jewelry seized by the Kalamazoo Valley Enforcement Team (KVET) on or about November 10, 2022 during the execution of a search warrant at the Defendant Real Property. The Defendant Jewelry is in the custody of the Drug Enforcement Administration.

    a. BRACELET: 10k white gold stamped hinged bangle bracelet; (226) single cut diamonds, 0.9mm-1.0mm = an estimated 0.95 carats, Good/I-J/SI1-SI2; (310) baguette cut diamonds, 1.75-2.0mm x 1.0-1.25mm = an estimated 4.00 carats, Good/I-J/SI1-SI2; 11.2 grams.

    b. BRACELET: Sterling silver and 18k yellow gold stamped David Yurman cuff bracelet; 6.25mm diameter; 39.3 grams.

    c. NECKLACE: 10k white gold stamped necklace with pendant; 30 inches long. 7.3mm wide; (1166) round brilliant cut diamonds, 1.0mm-1.4mm = an estimated 7.50 carats, Good/I-J/SI1-SI2; 179.6 grams.

    d. RING: 10k white gold stamped spinner ring; size 11; (185) round brilliant and single cut diamonds, 1.1mm-1.8mm = an estimated 1.15 carats, Good/I-J/SI1-SI2; 13.5 grams.

    e. RING: 10k white gold tested ring; size 11; (223) single cut diamonds, 0.8mm-0.9mm = an estimated 0.90 carats, Good/I-J/SI1-SI2; (77) baguette cut diamonds, 1.75mm x 0.75mm-1.0mm = an estimated 0.75 carats, Good/I-J/Si1-SI2; 8.2 grams.

    f. ROLEX: Stainless steel Rolex DateJust with aftermarket diamonds; 41mm case, pave dial, fixed bezel, oyster bracelet; (1412) round brilliant cut diamonds, 1.0mm-2.3mm = an estimated 19.00 carats, Good/H-I/SI1-SI2; Model 116300; Serial Number 9R9829C2; Movement X426Z242.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1345 and 1355(b)(1)(A), because this action is being commenced by the United States of America as Plaintiff, and the acts giving rise to the basis for forfeiture occurred in this judicial district.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1355(b)(1) because the acts or omissions giving rise to forfeiture occurred in this judicial district and/or pursuant to 28 U.S.C. § 1395(b) because the Defendant Real Property and the Defendant Jewelry was found within this judicial district.

## FACTS SUPPORTING FORFEITURE

6. On or about November 12, 2016, Anthony Ozomaro obtained the Defendant Real Property via a quit claim deed.

7. Thereafter, Ozomaro lived at the Defendant Real Property. Ozomaro reported to the Kalamazoo Department of Public Safety on or about February 8, 2019 that he resided at the Defendant Real Property. Ozomaro listed the Defendant Real Property with the Michigan Secretary of State as his residence. Ozomaro was listed with the City of Kalamazoo as the Defendant Real Property's owner and taxpayer. All utilities for the Defendant Real Property were in Ozomaro's name.

8. On March 8, 2019, a homicide occurred in the City of Kalamazoo. The victim, N.R., was the mother of three of Anthony Ozomaro's children. Ozomaro became a person of interest to detectives investigating N.R.'s death.

9. On March 8, 2019, detectives with the Kalamazoo Department of Public Safety obtained a warrant to search the Defendant Real Property in furtherance of their homicide investigation.

10. Investigators searched the Defendant Real Property on March 8, 2019. During the search, investigators found in an upstairs bedroom approximately 250 grams of methamphetamine, various caliber ammunition, a digital scale with methamphetamine residue on it, and Ozomaro's passport.

11. At the time of the search, Ozomaro had a prior felony controlled substance conviction.

12. Lab testing confirmed that the substance seized from the Defendant Real Property was methamphetamine and that the residue on the digital scale was also methamphetamine.

13. Methamphetamine is a Schedule II controlled substance.

14. Upon information and belief, no one was living with Ozomaro at the Defendant Real Property on March 8, 2019.

15. Ozomaro possessed the methamphetamine because he intended to distribute it. He used the Defendant Real Property to facilitate his drug trafficking.

16. Ozomaro was indicted in Case No. 1:19-cr-81 (HYJ) in the U.S. District Court for the Western District of Michigan for possession with intent to distribute methamphetamine based on the methamphetamine seized from the Defendant Real Property. Ozomaro went to trial and a jury convicted Ozomaro of the crime. Ozomaro is currently serving a 168-month prison term in the federal Bureau of Prisons.

17. At some time after Ozomaro was arrested, charged, convicted and sentenced in Case No. 1:19-cr-81 (HYJ), Tyrone Eugene Henderson moved into the Defendant Real Property and the Defendant Real Property became Henderson's residence. Upon information and belief, Henderson is Ozomaro's half-brother.

18. After moving in, Henderson made a number of improvements to the Defendant Real Property. For example, Henderson refinished the entire interior of the Defendant Real Property, to include the main floor kitchen, entry way, and living room. Henderson also renovated the second-floor bathroom and combined the

two bedrooms into a single bedroom. Henderson also renovated and enlarged the front porch of the residence.

19. Henderson has two prior felony drug convictions. On or about May 23, 1994, Henderson was sentenced for delivery/manufacturing less than 50 grams of controlled substances in the 9th Judicial Circuit Court in Kalamazoo County to 90 days jail and lifetime probation in Case No. 1993-0288-FH. His probation was subsequently revoked and he was sentenced to 1 year in jail. On July 17, 2002, Henderson was sentenced by the United States District Court for the Eastern District of Michigan to 120 months in prison for conspiracy to import 100 grams or more of heroin and attempted possession with intent to distribute 100 grams or more of heroin in Case No. CR 01-80851-1 (BAF).

20. In or about September 2022, law enforcement suspected Henderson was continuing to distribute controlled substances.

21. On or about October 18, 2022, KVET used a confidential informant to purchase methamphetamine from Henderson inside the Defendant Real Property. Lab testing confirmed that the substance Henderson sold to the KVET confidential informant inside the Defendant Real Property was 27.88 grams of methamphetamine.

22. On or about October 25, 2022, KVET used a confidential informant to make a second purchase of drugs from Henderson inside the Defendant Real Property. Lab testing confirmed that the drugs Henderson sold to the KVET

confidential informant inside the Defendant Real Property was 27.97 grams of methamphetamine and 2.59 grams of fentanyl.

23. Fentanyl is a Schedule II controlled substance.

24. On or about November 2, 2022, KVET used a confidential informant to make a third purchase of drugs from Henderson inside the Defendant Real Property. Lab testing confirmed that the drugs Henderson sold to the KVET confidential informant inside the Defendant Real Property was 83.7 grams of methamphetamine and 5.10 grams of fentanyl.

25. On or about November 7, 2022, KVET used a confidential informant to make a fourth purchase of drugs from Henderson inside the Defendant Real Property. Lab testing confirmed that the drug Henderson sold to the KVET confidential informant inside the Defendant Real Property was 10.04 grams of fentanyl.

26. On November 10, 2022, KVET investigators searched the Defendant Real Property pursuant to a warrant. Henderson was the only one home at the time of the search. Residency paperwork was found in Henderson's name, the house had only one bedroom, and the bathroom had just one toothbrush. Upon information and belief, Henderson was the only resident of the Defendant Real Property.

27. Henderson was found in the kitchen and dining area on the first floor of the Defendant Real Property after investigators entered the residence. Within feet of Henderson, investigators found several duffle bags, backpacks, and carrying

cases. A camouflage roller bag was searched and found to contain a metal hand press, a larger hydraulic press, two blenders, a sifter, lactose powder, scissors, vinyl globes, acetone spray, and a plastic bag containing over 400 grams of heroin.

28.     Heroin is a Schedule I controlled substance.

29.     Investigators also located a laptop carrying case that contained over three kilograms of heroin and fentanyl and 5.8 grams of cocaine. A red backpack contained a glass jar labeled "spare change." The glass jar contained a number of methamphetamine tablets.

30.     Cocaine is a Schedule II controlled substance.

31.     Also on the first floor in the open kitchen and dining area of the Defendant Real Property, investigators found a black duffle bag that contained three semi-automatic assault rifles. A grey Adidas duffle bag nearby contained a rifle sight and ten firearm magazines. Nine of the ten magazines were loaded and all of the magazines fit the assault weapons.

32.     On top of a kitchen cabinet, investigators seized a rubber-banded wad of money totaling $4,400, $600 of which was money KVET used to purchase controlled substances from Henderson through a confidential informant on November 2, 2022. The kitchen also contained an operational digital scale with fentanyl residue on it, two other digital scales, nitrile gloves, and sandwich bags. Investigators found a money counter in the basement.

33.     In Henderson's bedroom, investigators found a Tactical Walls mirror. Upon sliding the mirror to the side, law enforcement found an Anderson

Manufacturing AM-15 multi-cal rifle. The rifle was loaded with one cartridge in the chamber and it also had a loaded drum-style magazine. Also in Henderson's bedroom, investigators found a grey shoulder sling bag that contained a stolen Glock22, Gen4, .40 caliber pistol. The pistol was loaded with a magazine and had one cartridge in the chamber. The sling bag contained a pouch that contained two more loaded Glock magazines. The bag also contained Henderson's driver's license, medical marijuana card, Costco card, and two bank cards.

34. Investigators seized all controlled substances found inside the Defendant Real Property. The controlled substances were tested in the laboratory. The lab confirmed over 2.3 kilograms of fentanyl, 1.3 kilograms of a heroin/fentanyl mixture, 516.8 grams of heroin, 489.55 grams of methamphetamine, and 5.8 grams of cocaine were found in and seized from the Defendant Real Property.

35. Upon information and belief, the approximate street value of the controlled substances seized from the Defendant Real Property is over $200,000.

36. Upon information and belief, Henderson's income, or a substantial portion of his income, is from drug trafficking, not from legal sources.

37. Upon information and belief, Henderson paid for renovations to the Defendant Real Property with the proceeds of drug trafficking.

38. During the search of the Defendant Real Property, investigators also seized the Defendant Jewelry from Henderson, who was wearing it.

39. The Defendant Jewelry has an aggregate replacement value of over $40,000. Upon information and belief, the Defendant Jewelry was purchased with the proceeds of drug trafficking.

40. On December 6, 2022, Henderson was indicted in U.S. District Court for the Western District of Michigan for, among other offenses, possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) based on the controlled substances that investigators seized from the Defendant Real Property on November 10, 2022.

## CLAIM I

41. Plaintiff hereby re-alleges paragraphs 1 – 40 as referenced above.

42. The Defendant Real Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(7) because it constitutes real property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of a violation of 21 U.S.C. Chapter 13, Subchapter I.

## CLAIM II

43. Plaintiff hereby re-alleged paragraphs 1 – 40 as referenced above.

44. The Defendant Real Property is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes a thing of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. Chapter 13, Subchapter I and/or proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. Chapter 13, Subchapter I.

## CLAIM III

45. Plaintiff hereby re-alleges paragraphs 1 – 40 as referenced above.

46. The Defendant Jewelry is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes a thing of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. Chapter 13, Subchapter I, and/or proceeds traceable to an exchange of controlled substances in violation of 21 U.S.C. Chapter 13, Subchapter I.

## REQUESTED RELIEF

Wherefore, the United States requests that the Court issue a warrant for the arrest of the Defendant Real Property and the Defendant Jewelry; that due notice be given to all interested parties to appear and show cause why forfeiture to the United States of America should not be decreed; and that the Defendant Real Property and the Defendant Jewelry be condemned and forfeited to the United States of America and be delivered into the custody of the Drug Enforcement Administration for disposition according to law; and for such other relief as this Court may deem just and proper.

                                                MARK A. TOTTEN
                                                United States Attorney

Dated: April 26, 2023                        /s/ Joel S. Fauson
                                                JOEL S. FAUSON
                                                Assistant United States Attorney
                                                P.O. Box 208
                                                Grand Rapids, MI 49501-0208
                                                (616) 456-2404

## VERIFICATION

I am a Task Force Officer of the Drug Enforcement Administration with personal involvement in this investigation.

I have read the contents of the foregoing Verified Complaint for Forfeiture In Rem, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 4-26-2023

MARCEL BEHNEN
Task Force Officer
Drug Enforcement Administration